UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:12-CV-00729-D

| | | |
|---|---|---|
| TERESA M. SPEAKS, TOBY SPEAKS STANLEY SMITH, EDDIE BROWN, ROBERT POINDEXTER, MIKE MITCHELL, ROY L. COOK, ALEX SHUGART, H. RANDLE WOOD, ROBIN ROGERS and DANIEL LEE NELSON, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | OBJECTION TO SPEAKS PROPOSED SETTLEMENT BY PENDER SHARP AND SHARP FARMS, INC. |
| v. | ) ) | |
| U.S. TOBACCO COOPERATIVE, INC. f/k/a FLUE-CURED TOBACCO COOPERATIVE STABILIZATION CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) ) | |

Pender Sharp and Sharp Farms, Inc, individually and through counsel, submits the following objections to the proposed *Speaks* settlement. Pender Sharp incorporates his objections previously made on December 11, 2017. Objection to Settlement, *Speaks v. U.S. Tobacco Coop., Inc.*, 5:12-cv-00729-D, Doc. No. 92 (Dec. 11, 2017). Sharp Farms, Inc. is a member of the Defendant cooperative. Pender Sharp will appear and testify at the January 19, 2018 hearing and Sharp Farms, Inc. will be represented by counsel, C. Alan Runyan, *Runyan & Platte*, LLP, 2015 Boundary Street, Beaufort, South Carolina, Philip R. Isley, *Blanchard, Miller, Lewis & Isley*, P.A., 1117 Hillsborough Street, Raleigh, North Carolina and John L. Coble, *Marshall, Williams & Gorham*, LLP, 14 S. 5th Avenue, Wilmington, North Carolina

I. **Matter Jurisdiction**

A. Corporate Exception-Internal Affairs (28 U.S.C.§1332 (d)(9)(3)). This class action solely involves claims that relate to the internal affairs or governance of

Stabilization, an incorporated North Carolina corporation that arise under or by virtue of the laws of the State of North Carolina. Therefore, it should be dismissed for lack of matter jurisdiction.

i. The claims arise out of North Carolina Cooperative Associations Act, N.C.G.S. §§54-111 *et seq.* and 54-129 *et. seq.*

ii. The claims are for "matters peculiar to the relationship among or between" Stabilization, its officers, directors and members. *Edgar v. Mite Corp.*, 457 U.S. 624, 645 (1982).

iii. Cooperatives, as well as corporations, are within the class of "all business entities." *Manfield v. Edisto Electric Coop., Inc.*, No. CV 5:09-01645 MAS, 2010 WL 11531441 (D.S.C. Mar. 30, 2010); *Brady v. Denton County Electric Co-op, Inc.*, No. 4-09-CV-130, 2009 WL 3151177 (E.D. Tex. Sept. 29, 2009); *See also, Ferrell v. Express Check Advance of SC*, LLC, 591 F.3d 698, 704 (4th Cir. 2010).

iv. The Speaks amended complaint's distribution and dissolution claims derive solely from North Carolina Statutes: N.C.G.S. §55A-13-02(c); N.C.G.S.§55A-14-50.

v. Claims for dissolution go to the very core of a corporation's internal affairs. *Classic Coffee Concepts, Inc. v. Anderson* No. 06 CVS 2941, 2006-3476598 (N.C. Supr. Ct. Dec. 1, 2006); *Heine v. Streamline Foods, Inc.*, 805 F.Supp.2d 383, 390 (N.D. Ohio 2011).

vi. North Carolina statutory law requires that actions for dissolution be brought "in the county where a corporation's principal office…is or was last located." N.C.G.S. §55-14-31.

vii. Federal courts have long left controversies as to the internal affairs of a corporation "to the courts of the state of the domicile." *Rogers v. Guaranty Trust Co. of New York*, 288 U.S. 123, 130-31 (1933).

B.     Individuals who opt-out of an existing certified class action may not pursue a class action covering the same or similar issues but are instead limited to litigation individually.

    i. The *Speaks* plaintiffs opted-out of the Lewis class action. *See* Attachment A - Affidavit of Cameron Azari (all except Robin Rogers).

    ii. The N. C. Superior Court was informed that the Speaks plaintiffs pursued mediation of the Speaks case as opt outs from the certified Lewis class action. Attachment B - Tr. of Hearing, *Lewis v. Flue Cured Tobacco Coop. Stabilization Corp. (n/k/a U.S. Tobacco Coop., Inc.)*, No. 05 CVS 188, No. 05 CVS 1938, p. 31 (N.C. Super. Ct. Oct. 11, 2017).

**II.     The Court should abstain from exercising jurisdiction pursuant to *Colorado River* doctrine.**

A.     This Court should abstain from exercising jurisdiction pursuant to the *Colorado River* doctrine. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). The federal and state actions are parallel to the extent that each class contains "substantially the same parties litigat[ing] substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991); *vonRosenberg v. Lawrence*, 849 F.3d 163, 167-68 (4th Cir. 2017).

B.     The Defendant, Stabilization, is the same in both cases and the class representatives in *Lewis/Fisher* represent a class of members who include the *Speaks*

plaintiffs (prior to all but one of the *Speaks* representatives opting out of the state class to pursue this opt-out class).

C.      Except for the dissolution claim, the remedies sought in *Speaks* and *Lewis/Fisher* overlap in that both seek distribution of members' money retained by the Defendant.

D.      The federal case is duplicative of the *Lewis/Fisher* state case. In fact, the federal case was filed by one counsel for the *Lewis/Fisher* 5 years after he withdrew from *Lewis*.

E.      Considering the other *Colorado River* factors weigh in favor of abstaining from exercising jurisdiction:

  i.      There is no *res* in control of either court so the first two *Colorado River* factors are irrelevant.

  ii.     The third factor, the desirability of avoiding piecemeal litigation weighs in favor of abstention. The State court is set to determine the matter finally by trial in 2018. Proceeding in this forum creates questions of jurisdiction and full faith and credit while the state court proceeds and this matter is inevitably appealed.

  iii.    The fourth factor, the relevant order in which the courts obtained jurisdiction and the progress achieved in each action, weighs heavily in the favor of abstention. The *Lewis/Fisher* case was filed in 2005, certified as a class which has been affirmed by the North Carolina Supreme Court, and is set to go to trial in 2018. *Speaks* was filed in this court seven years after *Lewis/Fisher*, and after the *Lewis/Fisher* Plaintiffs filed their motion for class certification in state court.

  iv.     The fifth factor, whether state law or federal law provides the rule of decision on the merits, favors abstention. These cases hinge upon state law claims and *Speaks* remedies seek this court to dissolve a state corporation.

v.    The final factor, the adequacy of the state proceeding to protect the parties' rights, also weighs heavily in favor of the state case since that court has certified a class, which has been affirmed by the North Carolina Supreme Court.

F.    Since the federal case, filed seven years later, is duplicative of the state case and the presence of several factors heavily weigh in favor of abstention, exceptional circumstances exist for this Court to abstain from the exercise of jurisdiction under *Colorado River*.

## III. The proposed Speaks settlement class does not meet the requirements for Rule 23 certification. It fails both superiority and adequacy.[1]

A.    Rule 23's certification requirements must be met independent of a determination that a proposed settlement is "fair, reasonable and adequate." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620-22 (1997).

B.    "Undiluted, even heightened attention" to class certification requirements is called for in the context of a settlement class. *Amchem*, 521 U.S. at 620; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *See also* Manual for Complex Litigation ("MCL"), Fourth, §21.612 (2004). "Class actions certified solely for settlement, particularly early in the case, sometimes make meaningful judicial review more difficult and more important." MCL at § 21.611.

C.    "Rigorous analysis" of the *Speaks* certification requirements is required *General Telephone Co. of Southwest v Falcon*, 457 U.S. 147, 161 (1982).

D.    The *Lewis* class is different from the *Speaks* class in that membership in Stabilization from 1946 to the present is not the sole basis of class membership. The

---

[1] Numerosity and commonality are not at issue.

scope of the Speaks putative class definition creates inherent conflicts among class members. Compare the *Speaks* class definition with the *Lewis* class definition:

i. **Speaks:** All individuals, proprietorships, partnerships, corporations and other entities that are or were shareholders and/or members of U.S. Tobacco at any time during the Class Period, without any exclusion, including any heirs, representatives, executors, powers-of-attorney, successors, assigns or others purporting to act for or on their behalf with respect to U.S. Tobacco and/or the Settled Claims. Or. Prelim. Approving Settlement, *Speaks v. U.S. Tobacco Coop., Inc.*, 5:12-cv-00729-D, Doc No. 63 at 3 (Sept. 13, 2017).

"Class Period" means, for the purposes of this Stipulation only, the period of time from the date of U.S. Tobacco's incorporation on June 1, 1946 through and including the Effective Date of Settlement (as defined below). Exhibit A – Stipulation and Agreement of Class Action Compromise, Settlement, and Release, *Speaks v. U.S. Tobacco Coop., Inc.*, 5:12-cv-00729-D, Doc No. 60-1 at 3 (Sept. 8, 2017).

ii. **Lewis:** All individuals, proprietorships, partnerships, corporations, or their heirs, representatives, executors or assigns, and other proper entities that have been members/shareholders of the Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.) (hereafter "Stabilization") at any time from its inception through the end of crop year 2004, and any heirs, representatives, executors, successors or assigns, and;

(a) had not requested cancellation of their membership and whose membership was cancelled by Stabilization without a hearing, and/or

(b) were issued a certificate of interest in capital reserve by Stabilization for any of the tobacco crop years between and including 1967-1973, and/or

(c) delivered, consigned for sale, or sold flue-cured tobacco and paid an   assessment for deposit into the No Net Cost Tobacco Fund or No Net Cost Tobacco Account during any tobacco crop years between and including 1982-2004.

Attachment C (Br. of Pls.-Appellees, *Fisher v. Flue Cured Tobacco Coop. Stabilization Corp.*, No. COA14-609, p. 5-6 (N.C. Dec. 19, 2014)); Attachment D (Am. Or. on Mot. For Class Cert., *Fisher v. Flue Cured Tobacco Coop. Stabilization Corp.*, 05-CVS-188/05-CVS-1938 (N.C. Super. Ct. Feb. 7, 2014)).

The focused class definition in *Lewis* avoids the conflicts present in *Speaks* which are like those found present in a putative class action involving burley tobacco which the Kentucky court refused to certify. Attachment E (Op. and Or., *Congleton v. Burley Tobacco Growers Coop. Assoc.*, 06-CI-00069 (Ky. Cir. Ct., Fayette County, 4th Div. Feb. 13, 2007)).

E.     In Lewis, The issue of class certification has been vigorously argued, rigorously analyzed by the North Carolina trial court, certified by that court and finally determined by North Carolina's court of last resort. Attachment C (Br. of Pls.-Appellees).

   i.   The North Carolina Superior Court certified the class after many years of adversarial discovery on class issues (approx. 60,000 pages and 19 witnesses), 155 pages of memoranda and 3,335 pages of exhibits. Attachment C (Br. of Pls.-Appellees at p. 29-30).

   ii.  The North Carolina Supreme Court affirmed that certification. *Fisher v. Flue Cured Tobacco Coop. Stabilization Corp.*, 369 N.C. 202 (2016).

   iii. North Carolina does not allow continuing review for class certification decisions. *Dublin v. UCR, Inc.*, 115 N.C. App. 209, 219, 444 S.E. 2d 415, 461 (1994).

   iv.  The certification of the *Lewis* class action is entitled in federal courts, under the Full Faith and Credit Act, to the same preclusive effect on the *Lewis* certification issues as it would have in another court in North Carolina. *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 515 (1986); *Swanson v. Faulkner*, 55 F. 3d 956, 965 (4th Cir. 1995).

F.     The *Speaks* putative class does not meet Fed. R. Civ. P. 23(b)(3)'s superiority requirement. "In order to satisfy the superiority requirement, the class action must

be superior to, "and not just as good as, other available methods for handling the controversy. *See Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir.1975).

    i. In particular, Rule 23(b)(3)(B) instructs that the court should consider "the extent and nature of any litigation concerning the controversy already begun by … class members." Fed. R. Civ. P. 23.

    ii. Class certification for purposes of the *Speaks* settlement would undermine the *Lewis* class action, where the North Carolina Supreme Court has affirmed class certification and litigation has been slowly but steadily proceeding for over a decade, in favor of a case that was settled in its infancy. The inadequate *Speaks* settlement supports the fact of a "reverse auction" Stabilization pursued this settlement with *Speaks* counsel, despite very little activity in this court and no formal discovery, because *Speaks* counsel was more willing than *Lewis* counsel to resolve the entire litigation on terms favorable to Stabilization and which provided *Speaks* counsel a sizable fee for very little work.

    iii. The *Lewis* action is significantly more advanced through motion practice, discovery, and class certification, yet Stabilization did not attempt to engage in and did not invite *Lewis* counsel to participate in the mediation with *Speaks* counsel as required by the Lewis case management order. Instead, Stabilization began negotiations with lawyers whose case had not seen, until preliminary approval of the settlement was sought, a single substantive pleading filed, including Stabilization's failure to answer the complaint. Those facts speak strongly about Stabilization's desire to disadvantage the class members through

negotiations with weaker counsel in this litigation. It is self-evident that discounts have been made in this forum that would not have been available in the *Lewis* action, which is scheduled for trial in 2018.

iv. Certification of the proposed *Speaks* settlement class and approval of the inadequate Speaks settlement would ignore the superiority of this matter determined in a forum where certification has already been achieved, the facts have been subject to extensive discovery, the jurisdiction of the court is not questioned, and the actions of counsel do not create serious questions of adequacy. *See* Fed. R. Civ. P. 23(b)(3)(C). In one forum, the Lewis action is steadily proceeding to trial to secure justice for the class members, while in this forum, counsel for Stabilization and *Speaks* jointly ask this Court to approve a settlement of less than one-sixth the value of that which has already been rejected in the *Lewis* action.

v. Stabilization and *Speaks* counsel cannot support their contentions that this forum and this process are superior. The preliminary approval papers hardly try, simply stating that this forum is far superior to the North Carolina Superior Court because federal law governing class actions is "well developed and clear-cut." *See* Memo. Supp. Prelim. Approval, *Speaks v. U.S. Tobacco Coop., Inc.*, 5:12-cv-00729-D, Doc. No. 58 p. 18 (Sept. 8, 2017). This Court should find that the class should not be certified because the superiority requirement has not been met.

vi. The North Carolina state court is a superior forum because almost two-thirds of the class members reside there and 80% of United States tobacco production is in North Carolina. Historically, North Carolina has been the source of more than

two-thirds of all flue-cured tobacco grown in the United States. Attachment F (Affidavit of Steven W. Troxler, North Carolina Commissioner of Agriculture, December 19, 2017); Attachment G (Affidavit of Dr. Glenn W. Harrison, December 20, 2017).

G.    The interests of *Speaks* class members are not adequately represented by the class representatives. Attachment G (Affidavit of Dr. Glenn W. Harrison, December 20, 2017).

    i.   There are inherent conflicts of interest within the *Speaks* putative class because the scope of the class includes all members without regard to their separate patronage interests.

        a.   The right to participate in cooperative gains requires patronage in the period of the gain not just membership. North Carolina Cooperatives are "not organized to make profits for themselves as such or for their members as such but only for their members as producers." N.C.G.S. § 54-130. Earnings "shall be apportioned among the members in accordance with the ratio which each members' patronage during the period involved bears to the total patronage by all members during the period." N.C.G.S. § 54-126.

    ii.  The Speaks "membership" class creates conflicts between:

        a.   those members whose tobacco produced gains and those members whose tobacco did not;

        b.   those who were member-patrons in years when there was no gain and those who were member-patrons in years of gain;

c. those whose patronage interests in certain years have already been determined and those who have no patronage interest in those years, the $26.8 million in certificates of interest partially redeemed (~$5,000,000);

d. those who are due the book value of their share of stock because of its cancellation and those whose shares have not been cancelled, ~$4,000,000;

e. those whose patronage interest derives from the 1982-2004 period when patronage interests could only properly be determined by considering no net cost (NNC) assessments for the total period and those that did not pay NNC assessments or who did but whose interests vary because of a difference in assessments paid.

f. These conflicts of interest present in the Speaks putative class are the same as those found to prevent certification in another putative class action involving the same NNC assessment time period, 1983-2004, and burley tobacco. Attachment E (Op. and Or., *Congleton v. Burley Tobacco Growers Coop. Ass'n.,* No. 06-CI-00069 (Ky. Cir. Ct., Fayette County, 4th Div., Feb. 12, 2007)); Attachment C (Br. of Pls.-Appellees at p. 40-46).

iii. Inclusion of the *Lewis* certified class creates an inherent conflict of interest in the adequacy of representation of class members.

a. *Lewis* class representatives more adequately represent a cross-section of the class than Speaks putative class representatives who have never been parties in the Lewis class action. Attachment G (Affidavit of Dr. Glenn W. Harrison, December 20, 2017).

b. *Lewis* class representatives have been found adequate by the N.C. Superior Court, which are affirmed by the N.C. Supreme Court after extensive discovery on their adequacy over vigorous objection. There has been no adversarial inquiry into the adequacy of the *Speaks* class representatives.

c. The Speaks class representatives could not, at the *Speaks* mediation, adequately represent the interests of the *Lewis* certified class members because they had opted out of *Lewis* or, if they had not, because they had not been found adequate to represent those interests and were specifically not permitted to negotiate those interests under the order of the North Carolina Superior court because only "the parties" to Lewis were authorized to mediate the *Lewis* certified class interests. Attachment H - Case Management Or., *Lewis v. Flue Cured Tobacco Coop. Stabilization Corp. (n/k/a U.S. Tobacco Coop., Inc.)*, No. 05 CVS 188, No. 05 CVS 1938, p. 4 (N.C. Super. Ct. Apr. 27, 2017).

H.    The interests of *Speaks* class members are not adequately represented by *Speaks* proposed class counsel.

i. The legal interests of the *Lewis* certified class members were not represented during the settlement negotiations.

a. Counsel for the *Speaks* plaintiffs disavowed any intent to mediate the interests of "any class of U.S. Tobacco members" before the mediation. Attachment I (Letter of Gary Shipman to Bob Cherry May 8, 2017).

b. Counsel for Stabilization did not request class counsel for the *Lewis* class to mediate the interests of the *Lewis* class members as required by the *Lewis* case management order.

c. Counsel for *Speaks* lacked the authority at the time of the negotiation, execution of the term sheet and execution of the settlement agreement to represent the legal interests of the *Lewis* class members.

      i. The only counsel who had been found adequate to represent the interests of the *Lewis* class members at the time of the mediation was not involved in that negotiation and was excluded from knowing of their scope and outcome until the filing of the settlement agreement.

      ii. The N.C. Superior Court has found that upon the certification of the *Lewis* class (2014), the "only conduit for communications concerning matters which affect, concern or bind the [*Lewis*] class" was through *Lewis* class counsel. Attachment J (Or. Denying Mot. to Show Cause, *Lewis v. Flue Cured Tobacco Coop. Stabilization Corp. (n/k/a U.S. Tobacco Coop., Inc.)*, No. 05 CVS 188, No. 05 CVS 1938, (N.C. Super. Ct. Oct. 13, 2017)).

d. Counsel for the *Speaks* plaintiffs showed a lack of understanding during the mediation of how properly to deal with the patronage interests of

members constrained by the change from crop year accounting in 1982 to accounting driven by NNC assessments between 1982-2004. This lack of understanding is reflected in the conflicts created by the *Speaks* class definition. Attachment K (Gary Shipman email to Derek Shaffer, May 11, 2017).

e. The circumstances surrounding the bringing of the *Speaks* action, its 5-year consent delay in prosecution, the rush to settle it after the final *Lewis* class final certification, the mediation excluding *Lewis* parties counsel but including *Lewis* class interests, the gross inadequacy of the settlement amount, the attempt to bind the *Lewis* certified class to the settlement using federal court injunctive relief all support the collusion of Stabilization and Speaks counsel to secure the most favorable result for Stabilization at the expense of over 100,000 + current and former growers of flue-cured tobacco.

ii. The proposed settlement is against the interests of the *Lewis* class members.

a. It subjects the interests of members in a finally certified class (*Lewis*) with many years of adversarial discovery, rulings on motions to dismiss and rulings on class certification to a class (*Speaks*) in which no answer has been filed, no adversarial discovery conducted, whose class description creates conflicts among the class members directly harming the interests of the *Lewis* class who fall within a definition judicially found not to create conflicts.

b. It forces the *Lewis* class members, whose certified class claims do not include a dissolution claim, to be part of a class with such a claim subjecting them not only to undesired relief but also to the weakness that such a claim brings to success on the merits because of defenses bolstered by its presence such as the derivative claim defense.

IV.       **The proposed settlement is not fair, reasonable or adequate.**

i. The proposed settlement is unfair considering the treatment of class members vis-a-vis each other, unreasonable given its relationship to class member claims and grossly inadequate in comparison to amounts offered by Stabilization in the *Lewis* case in 2005, 2007, 2008, *before* it was finally certified in 2014 and to the judgment obtained in a similar action by members of a tobacco cooperative.  Attachment C (Br. of Pls.-Appellees at p. 41-42); Attachment L (*Congleton v. Burley Tobacco Growers Coop. Ass'n.*, No. 06-CI-00069, p. 8 (Ky. Cir. Ct., Fayette County, Fourth Div., March 12, 2007) (ordering distribution of approximately $130,000,000 to member growers).

a. The North Carolina Commissioner of Agriculture, a state in which "nearly 80% of flue-cured tobacco grown in the United States is grown" has "serious doubts about the fairness of the settlement to former and current tobacco farmers in North Carolina, as well as in all states in which there are flue-cured tobacco farmers."

b. He believes the "objection process" has been "rushed and unnecessarily complicated", "counter-intuitive" and "discourages class members from voicing objections."

c. He believes its timing occurring so shortly after the Lewis case was finally certified "raises concerns."

d. He expresses "grave concerns regarding the fairness of the amount of the settlement" compared to Stabilizations assets of $500 million, the $15,000 cap per claim and the previous offers in the *Lewis* case. Attachment F (Affidavit of Stephen W. Troxler, North Carolina Commissioner of Agriculture, December 19, 2017).

e. The Commissioners of Agriculture for Virginia and South Carolina, the second and third largest flue-cured tobacco growing states join with Commissioner Troxler trough their own affidavits. Attachment M (Affidavit of Sandra J. Adams, Virginia Commissioner of Agriculture and Consumer Services, December 19, 2017); Attachment N (Affidavit of Hugh E. Weathers, South Carolina Commissioner of Agriculture, December 19, 2017).

i. The *Speaks* $24 million settlement is woefully inadequate.

a. In 2005, the *Lewis* plaintiffs moved for preliminary approval of a settlement that would have provided $76.8 million in cash and $212 million in book allocations. *See Speaks v. U.S. Tobacco Coop., Inc.*, 5:12-cv-00729-D, Doc. No. 64 p. 16 ¶ 53 (Sept. 13, 2017).

b. Even though the settlement amount was more than three times greater than the *Speaks* settlement amount, the *Lewis* court found that it was not within the necessary "ball park of being fair, reasonable, and adequate", after extensive discovery on the issue of the settlement's reasonableness.

c. Stabilization also has failed to inform this Court of prior offers extended

by it during two mediations in *Lewis* after the 2005 settlement was rejected, but before the *Lewis* class was certified. Attachment B (Tr. of Hearing).

    d.  Objectors believe a thorough in camera review of these prior offers would give this Court a better understanding of the value Stabilization has placed on the *Lewis* action that will significantly impact the Court's determination as to the reasonableness of the *Speaks* settlement.

ii.  Not only is the value of the proposed settlement well outside of the range of reasonableness, "the parties have provided virtually no information regarding class members' potential range of recovery and their proposed settlement must be denied on that basis." *Patterson v. Premier Constr. Co. Inc.*, 15CV00662SLTST, 2017 WL 122986, at *3 (E.D.N.Y. Jan. 12, 2017).

iii.  The minimum of the amounts in dispute are ten times greater than the *Speaks* settlement amount.

    a.  $4,000,000 for cancelled shares to specific members carried as stock redemption payable.[2]

    b.  $26,802,854 to those already partially paid for crop years 1967-73 and partially redeemed (~$5,000,000).

    c.  $110,000,000 recorded as "additional paid in capital" from sale of 1982-84 crops using NNC monies.

---

[2] Stabilization purged 99.99625% of its membership in 2004 going from 803,912 members to 846 members. It is in large part the value of these purged members patronage interests that are at issue in the *Lewis* class. Attachment O (Pls. Memo. in Support of Mot. for Class Cert., *Lewis v. Flue Cured Tobacco Coop. Stabilization Corp. (n/k/a U.S. Tobacco Coop., Inc.)*, No. 05 CVS 188, No. 05 CVS 1938, p. 23-24 (N.C. Super. Ct. July 9, 2012)).

d. $81,520,000 recorded as "contributed capital," which is the proceeds of the Fair and Equitable Tobacco Reform Act ("FETRA") tobacco also using NNC monies.

  1. The Kentucky court ordered all the proceeds of the burley tobacco released by the USDA because of FETRA, sold, and distributed to the growers. The value of the burley distribution was ~$120,000,000. *See* Attachment I.

iv. The *Speaks* plaintiffs have also failed to provide this Court with any explanation as to the reason for the steeply-discounted settlement here. The vague and conclusory statements as to the "risks and uncertainties" of continued litigation do not justify the low settlement amount.

v. Stabilization's reserves, generated by profits from the sale of class members' tobacco, are sufficient to fund a substantial settlement.

  a. The reserves available for distribution are ~$350,000,000.

  b. North Carolina law does not allow Stabilization to make a profit, but it may maintain a reasonable reserve. There has been no showing in *Speaks* that this reserve amount is necessary—only conclusory statements of Stabilization counsel and reliance the business judgment of its directors.

  c. For this reason, Stabilization's public director, Jimmy Hill, moved to distribute $136,000,000 in January 2005. Attachment P (Dep. of Jimmy Hill at 326-27).

     vi.   The settlement release is broader than necessary.

          a.   It releases claims without a formal joinder of the issues and does so for claims that are not part of the *Speaks* action.

          b.   It releases individuals and entities who have not contributed to the settlement and who are not parties.

     vii.  The settlement procedure makes class members prove what Stabilization is already able to prove but which *Speaks* counsel, inadequately, did not appreciate or did not negotiate: total pounds of tobacco marketed and total crop years.

          1.   From 1946-2004, the USDA through its implementing agencies, the Commodity Credit Corporation and the Farm Service Agency, for tobacco crop loans contractually required Stabilization to maintain these records in each years "Tobacco Loan Agreement".

          2.   These records have been produced to class counsel in *Lewis* and have been the subject of opinions given by an expert for the Lewis class in 2012. Attachment Q (Affidavit of Dr. Glenn W. Harrison, July 3, 2012).

     viii. Settlement makes the class members who get paid indemnify Stabilization for any escheat liability.

**V.     Due Process requires the ability to opt out on a class wide basis under these facts and the preliminary approved order does not allow class wide opt-outs.**

     A.     Pender Sharp did not opt out of the *Lewis* class action choosing to be represented by *Lewis* class representatives and class counsel.

B.     Procedural due process rights are violated if an absent class member's individual right to choose to be part of a certified class action is not honored by allowing their chosen representatives to act on their behalf after that choice is made.

C.     While the preliminary approval order is consistent with cases involving attempted class wide opt outs before absent class members have had the opportunity afforded by due process to remain in or opt out of the class, it is inconsistent here where class wide opt out is not allowed after that choice has been made because class representatives, including class counsel, are denied the opportunity to represent absent class members' due process interests.

D.     Class opt-outs are prohibited for putative classes and certified classes that have not completed the notice and opt-out period. *Hanlon v. Chrysler Corp.*, 151 F.3d 1011, 1024 (9th Cir. 1998); *Berry Petroleum Co. v. Adams and Peck*, 518 F.2d. 402, 410 (2d. Cir. 1975); *In re Lease Oil Antitrust Litigation (No. II)*, 186 F.R.D. 403, 439-40 (S.D. TEX. 1999); *See generally* Rubenstein, 3 Newberg on Class Actions § 9.49 (5th Ed. 2013).  However, the prohibition is based on the absence of a due process election by absent class members to allow a putative class representative to forego rights under an alternate proceeding.  *See In re Lease Oil Antitrust Litigation (No. II)* ("Here, as in *Hanlon*, there is no evidence that the members of the *Rudman* and *Duhe* classes were notified of those state court classes and chose to participate in those cases").

VI.     Anticipated Witnesses

A.     Pender Sharp: Mr. Sharp will testify to his family's years of growing and selling flue-cured tobacco, his involvement and membership in the *Lewis* certified class action,

the unfairness and inadequacy of the proposed Speaks settlement and other matters that may relate to the issues raised by the fairness hearing.

B.      Dr. Glenn Harrison:    Dr. Harrison may be called to testify to the issues and opinions generally stated in his affidavits from 2012 and 2017 submitted with this objection.

C.      Dr. Greg George. Dr. George may be called to testify to the issues and opinions he shares with Dr. Harrison as stated in Dr. Harrison's affidavits.

_____
Pender Sharp and Sharp Farms, Inc.

By: _C. Alan Runyan, Esq._
C. Alan Runyan, Esq.
Runyan & Platte
S.C. Bar No. 4837
2015 Boundary Street, Suite 239
Beaufort, South Carolina  29902
Telephone: (803)-943-4444
Facsimile: (843)-522-0142
arunyan@runyanplatte.com
(*special appearance request to be filed*)

By: _____
Philip R. Isley, Esq.
N.C. Bar No. 19094
Blanchard, Miller, Lewis & Isley, PA
1117 Hillsborough Street
Raleigh, NC 27603
Telephone: (919) 755-3993
Facsimile: (919) 755-3994
pisley@bmlilaw.com

William Robert Cherry, Jr., Esq.  /s/
wrc@mwglaw.com
N.C. Bar No. 7655
John L. Coble  /s/
NC State Bar No. 12903
Marshall, Williams & Gorham
14 South Street
Post Office Drawer 208
Wilmington, NC  28402-2088
Telephone: (910) 763-9891

Dennis T. Worley, Esq.  /s/
dennisworley@wwpemlaw.com
N.C. Bar No. 10119
Paul J. Ekster, Esq.  /s/
paul@wwpemlaw.com
N.C. Bar No. 26672
Wright, Worley, Pope, Ekster &
  Moss
Post Office Box 457
Tabor City, NC  28463
Telephone: (910) 653-2082

22

James L. Ward, Jr., Esq.  *|s|*
jward@mcgowanhood.com
N.C. Bar No. 24595
McGowan, Hood & Felder, LLC
321 Wingo Way, Suite 103
Mt. Pleasant, SC 29464
843-388-7202 (tel.)
843-388-3194 (fax)
*Plaintiffs' Class Counsel*

By: Pender Sharp

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing document was served upon the parties shown below *via* first class, United States mail:

Clerk of the Court
U.S. District Court
Eastern District of North Carolina
3010 New Bern Ave.
Raleigh, North Carolina 27601

Gary K. Shipman
Shipman & Wright, LLP
575 Military Cutoff Road, Suite 106
Wilmington, North Carolina 28405

Derek L. Shaffer
Quinn, Emanuel, Urquhart & Sullivan, LLP
777 6th Street NW
Washington, DC 20001

Respectfully submitted this 20th day of December, 2017.

**Blanchard, Miller, Lewis & Isley, P.A.**

_____ */s/ Philip R. Isley* _____
Philip R. Isley
N.C. Bar No. 19094
1117 Hillsborough Street
Raleigh, NC 27603
Telephone: (919) 755-3993
Facsimile: (919) 755-3994
pisley@bmlilaw.com