# ATTACHMENT F

# AFFIDAVIT

1. I, STEVEN W. TROXLER, being first duly sworn, do depose and say that I am over the age of eighteen years of age, of sound mind, and as the duly elected North Carolina Commissioner of Agriculture, have the authority to execute the foregoing Affidavit.

## Role and Responsibilities

2. Since 2005, I have served as the North Carolina Commissioner of Agriculture. The Office of the Commissioner of Agriculture is established by the North Carolina State Constitution. As Commissioner, I am elected by the people of the state in elections held every four years. As a constitutional officer, the Commissioner of Agriculture is a member of the Council of State, which is headed by the Governor and constitutes the highest-ranking body in the Executive Branch of State Government.

3. I am submitting this Affidavit as the duly-elected North Carolina Commissioner of Agriculture.[1]

4. As Commissioner of Agriculture, I am in charge of the N.C. Department of Agriculture and Consumer Services, consisting of 20 divisions and more than 2,000 employees. The mission of NCDA&CS is to provide services that promote and improve agriculture, agribusiness and forests; protect consumers and businesses; and conserve farmland and natural resources for the prosperity of all North Carolinians.

5. As Commissioner of Agriculture, I direct the implementation of more than 75 different laws and programs. The N.C. Department of Agriculture and Consumer Services' divisions have responsibilities in regulatory and service areas covering agronomy; animal health; weights and measures; gas and oil inspection; crop and livestock statistics; USDA commodity distribution; state farm operations; food, drug and cosmetic testing for purity; agricultural marketing and promotion; agricultural marketing grading; international agricultural crop and livestock marketing; operation of the North Carolina State Fair and North Carolina Mountain State Fair; operation of four state farmers markets; research station operations; seed and fertilizer inspection; nursery and plant pest eradication activities; regulation of the structural pest control industry; agricultural environmental issues; soil and water conservation; forest promotion and protection; state and federal agricultural legislation; and agricultural economic analysis.

---

[1] Individually, I am a class member. Any action I take as a class member will be done by me individually, separate and apart from any action I take in my official capacity as the Commissioner of Agriculture.

## First-hand, Personal Knowledge of Farming

6. In addition to being the North Carolina Commissioner of Agriculture, I was raised in the Guilford County community of Browns Summit and have spent my entire career in agriculture as founder, owner and operator of Troxler Farms. Over the years, our family-owned farm has produced tobacco, wheat, vegetables and soybeans.

7. During my career, I have been honored with the Conservation Guardian Award of the Guilford County Soil Conservation Service; the Philip Morris Outstanding Youth Tobacco Farmer Award; the Outstanding Young Farmer Award from the North Carolina Jaycees; the N.C. Agricultural Extension Service's Outstanding Service Award; the Certificate of Merit from the NCSU chapter of Gamma Sigma Delta agricultural honor society; and Honorary State and National FFA Degrees. Additionally, I served as vice-chairman of the Phase II Board of Director (In 1999, 14 tobacco-producing states signed the National Tobacco Grower Settlement Trust Agreement, commonly referred to as Phase II, requiring tobacco companies to pay a total of $5.15 billion over 12 years to compensate tobacco growers and quota owners for the economic consequences resulting from the 1998 Master Settlement Agreement.) My family was named "Tobacco Farm Family of the Year" by the Tobacco Growers Association of North Carolina.

## Tobacco Data for North Carolina

8. Tobacco remains an important part of North Carolina's economy and a vital crop for producers. North Carolina is known for producing the highest-quality tobacco because our soils and climate produce the richest, most flavorful leaf in the world. Currently, nearly 80% of flue-cured tobacco grown in the United States is grown in our state.

9. North Carolina remains the number one flue-cured tobacco producing state in the United States. In 2016, North Carolina farmers raised 165,000 acres of flue-cured tobacco. This 330-million-pound harvest contributed $668.6 million to farm gate receipts. Employment relating to tobacco was 6,160 jobs in North Carolina as of 2014.

10. Since the passage of the Tobacco Transition Payment Program (TTPP or commonly referred to as the tobacco buy-out) in 2004, the industry has been in a period of change. This program was established to help tobacco quota holders and producers transition from the Depression-era tobacco quota program managed by USDA-Farm Service Agency to a free market system. As a result of TTPP, the number of tobacco farmers in our state was significantly reduced. The Census of Agriculture is conducted every five years by USDA-National Agricultural Statistics Service; their results show the following changes in tobacco production in North Carolina:
    a. 1969 Census of Agriculture: 64,006 farms harvested over 674.9-millon pounds of tobacco grown on 372,122 acres.

b. 1974 Census of Agriculture: 44,023 farms harvested over 714.1-million pounds of tobacco grown on 366,841 acres.
   c. 1987 Census of Agriculture: 22,260 farms harvested over 478-million pounds of tobacco grown on 239,343 acres.
   d. 1997 Census of Agriculture: 12,586 farms harvested over 696.3-million pounds of tobacco grown on 317,994 acres.
   e. 2012 Census of Agriculture: 1,682 farms harvested over 391.7-million pounds of tobacco grown on 167,443 acres.

**Concerns Regarding the Fairness of the Proposed Settlement for North Carolina Tobacco Farmers, both Past and Present**

11. In my role as Commissioner for the North Carolina Department of Agriculture and Consumer Services, I have followed the litigation relating to the efforts of the former members of the Flue-Cured Tobacco Cooperative Stabilization Corporation. I am familiar with the *Fisher/Lewis* cases in the state court, as well as the *Speaks* case before Your Honor. In fact, I know many of the named plaintiffs in both cases.

12. As Commissioner, I have serious concerns about the proposed settlement in the *Speaks* case. Based on the information I have gathered to date and conversations with concerned class members across the State, I have serious doubts about the fairness of the settlement to former and current tobacco farmers in North Carolina, as well as in all states in which there are flue-cured tobacco farmers.

13. Based on information and belief, the objection process in the *Speaks* case has been rushed and unnecessarily complicated. The written letter and triplicate submission process outlined in the Long Form Notice is counter-intuitive and discourages class members from voicing objections. The objection process does not provide guidance forms or options for electronic submission through website or by email, without the need to mail three separate letters. Moreover, the timing of the settlement raises concerns. The *Fisher/Lewis* cases have been ongoing in state court for almost 12 years prior to the announced settlement in *Speaks*. The North Carolina Supreme Court only recently affirmed the class certification on December 21, 2016. A relative short time thereafter and prior to additional discovery on the merits proceeding in the state action, plaintiffs in the *Speaks* case reached a settlement on September 8, 2017. Lastly, given the impacts this settlement may have on the *Fisher/Lewis* cases, the December 20, 2017 deadline to object simply does not provide enough time for class members to adequately understand the terms of the settlement and to make an informed decision.

14. There are also inconsistencies in the Long Form Notice provisions and the Court's Order Preliminarily Approving Settlement. For example, paragraph 21 of the Court's Order states in part that "to object, the Objector must provide to the Claims Administrator (who shall forward it to Class Counsel and Counsel for Defendant)." However, in the Long

Form Notice under the instruction for objecting to the settlement, it requires class members to provide and mail copies of the objection to both class counsel and defense counsel.

15. Based upon conversations and inquiries to my office, it appears that it is very difficult for class members to obtain the necessary information they need to substantiate their claim. The information required to file either a Group 1 or Group 2 claim is not readily available to class members. Group 1 claims include the submission of documents that may help determine the total pounds of flue-cured tobacco they or their predecessor marketed and sold from 1946-2017. Group 2 claims are required to submit documents that may help determine the total number of crop years in which they or their predecessor marketed and sold flue-cured tobacco from 1946-2017. Conversations with the United States Department of Agriculture indicates that they are unable to provide records to class members to substantiate current and former farmers' claims.

16. Additionally, there is a lot of confusion regarding the relationship of the Fisher/Lewis state cases and the Speaks case in federal court. The Speaks notice overlapped with the Fisher/Lewis notice and has confused many North Carolina farmers. In my department, my Agricultural Program Specialist for tobacco programs has fielded over 100 calls from North Carolina farmers who have questions and concerns regarding the proposed settlement and its potential impact upon the state court cases. There needs to be more time to allow class members to educate themselves on the implications of parallel proceedings.

17. Based upon the information and inferences provided in the settlement documents and the settlement website at https://fluecuredtobaccosettlement.com, the *Speaks* case is attempting to end the certified class action pending in state court. The *Lewis/Fisher* cases have been ongoing since 2005, are certified by the North Carolina State Supreme Court, and is currently scheduled to go to trial in 2018.

18. I also have grave concerns regarding the fairness of the amount of the settlement. Based on information from named plaintiffs in the state court action in *Fisher/Lewis*, Defendant U.S. Tobacco has previously offered more than 5 times the amount of what is offered in the *Speaks* settlement. Additionally, from information shared by Defendant to its members at its last annual meeting, it appears that U.S. Tobacco Cooperative Inc's current assets total in excess of $500 million. Also, I am concerned that under the *Speaks* settlement recovery for Group 1 will be capped at $15,000 when in many cases, farmers have paid into the co-op in excess of that amount in just a single year.

19. I have personally spoken with the Commissioners of Agriculture of Georgia, South Carolina and Virginia. We all have serious concerns regarding the fairness of this

settlement and how it appears to be rushed through the courts and confusing to our farmers.

Further, Affiant sayeth not.

This the 19 day of December 2017.

*Steven W. Troxler*
Steven W. Troxler
Commissioner
North Carolina Department of Agriculture & Consumer Services

Sworn to and subscribed before me,
This the 19 day of December 2017.

*Janine S. McLawhorn*
NOTARY PUBLIC
My Commission Expires: 8/9/2022
[Notary Seal]